**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

MARTINS OCHOLI,

Plaintiff,

-vs-                                              **Case No. 11-C-0310**

SKYWEST AIRLINES,

Defendant.

## DECISION AND ORDER

The Plaintiff, Martins Ocholi ("Ocholi"), filed this pro se employment discrimination action against his employer, Defendant SkyWest Airlines ("SkyWest"). By a January 27, 2012, Decision and Order ("January 27 Decision"), this Court granted SkyWest's first motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, but also granted Ocholi leave to file an amended complaint. Ocholi timely filed an Amended Complaint. (ECF No. 18.) SkyWest now moves to dismiss the Amended Complaint under the Federal Rules of Civil Procedure, Rule 12(b)(1) and 12(b)(6).

SkyWest contends the action must be dismissed because the Amended Complaint does not contain sufficient factual detail implying either a termination of Ocholi's employment with SkyWest or a relation of any alleged termination to Ocholi's color, race or national origin. Thus, Ocholi has failed, SkyWest asserts, to provide a plausible showing

of his entitlement to relief for employment discrimination under Title VII of the Civil Rights Act of 1964 as amended. 42 U.S.C. § 2000e *et seq.*

## Rule 12(b)(1) Motion

Although SkyWest cites Rule 12(b)(1), neither SkyWest's motion to dismiss nor its supporting memorandum provide any basis for dismissing the action for lack of subject-matter jurisdiction. The Court previously found that Title VII's requirement that Ocholi file a charge with the Equal Employment Opportunities Commission ("EEOC") does not limit its jurisdiction. (Court's Jan. 27, 2012, Decision & Order 2) ; *see Reed Elsevier, Inc. v. Muchnick*, 559 U.S.____, 130 S. Ct. 1237, 1246 (2010); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). Therefore, with respect to Rule 12(b)(1), SkyWest's motion is denied and the Court proceeds to consider the motion with respect to Rule 12(b)(6). *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-93 (7th Cir. 2011).

## Rule 12(b)(6) Motion Standards

In considering a Rule 12(b)(6) motion to dismiss, courts take as true "all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiffs' favor."*Id.* However, conclusory statements are not entitled to this presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010). To survive a Rule 12(b)(6) motion to dismiss, then, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though pro se plaintiffs' complaints are held

-2-

to a less stringent standard than those drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011), they must still contain sufficient factual matter to be facially plausible, *see, e.g.*, *Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011).

**Facts**

A. January 27 Decision Concerning Ocholi's EEOC Charge and Original Complaint

The January 27 Decision outlined certain procedural limitations placed on employment discrimination claims. A plaintiff generally cannot bring claims in a Title VII lawsuit that were left out of the required previous administrative filing with the EEOC ("EEOC charge"). *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule is not a jurisdictional one, but it does impose a condition precedent with which the plaintiff must comply. *Id.* The EEOC charge requirement serves the dual purpose of providing the EEOC an opportunity to investigate the allegations and settle the suit, *id.* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)), and the employer notice of the conduct about which the employee is aggrieved, *id.* (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

Because lay persons, not trained lawyers, often file EEOC charges, they are not expected to allege every single fact that would form the basis of a complaint in a subsequent lawsuit. *Id.* Consequently, a Title VII plaintiff may also include claims in his complaint that are (1) "'like or reasonably related'" to the allegations contained in the EEOC charge and (2) "'growing out of such allegations.'" *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*,

538 F.2d 164, 167 (7th Cir. 1976)).  To be "like or reasonably related," the claims of the complaint must, at a minimum, "describe the *same conduct* and implicate the *same individuals*" as the allegations of the EEOC charge.  *Id.* at 501.  To be "growing out" of the allegations of the EEOC charge, the claims of the complaint must reasonably be expected to be uncovered during an EEOC investigation of the charge.  *Id.* at 500.

Applying these principles in the January 27 Decision, this Court determined that the claims of Ocholi's original Complaint were not like or reasonably related to the allegations in his EEOC charge.  For his EEOC charge, Ocholi checked three boxes indicating he was discriminated against based on "race," "color," and "national origin." (Aff. Def.'s Mot. Dismiss, ¶ 2, Ex. A.) (ECF No. 13, Attach. 1.)  He then described an August 2008 incident.  After a chemical sprayed into Ocholi's eye, his supervisor, Dan Stills ("Stills"),[1] made a comment regarding Ocholi's national origin and threatened to terminate his probationary employment unless Ocholi signed for a receipt of SkyWest's safety policy and backdated it to his date of hire.  (*Id.*)  Ocholi signed for, but did not backdate, the receipt.  (*Id.*)  On or about November 18, 2008, Ocholi was discharged after being accused of stealing a $1.00 bag of popcorn given to him by another supervisor.  (*Id.*)  Ocholi also states that he believes SkyWest discriminated against him because of his national origin - Nigerian - by discharging him.  (*Id.*)

---

[1] Ocholi's filings refer to this person as "Mr. Dan Stills," "Mr. Stills," "Mr. Dan," "Mr. styles," "Mr. Dan Styles," "Mr. Dan Staly," "Mr. Dan Still," "Mr. Dan Stalus," "Mr. Stalys Dan," "Mr. Dan S.," "Mr. Dan Stay," or "Mr. Dan Stilly."  SkyWest refers to this person as "Mr. Dan Stiles."  Because Ocholi mainly uses the surname "Stills" for this person and because the January 27 Decision referred to the same person as "Stills," this Decision  will continue referring to the person as "Stills."

Ocholi's original Complaint, construed liberally, claimed that his SkyWest supervisor's actions against him were prompted by his wife's race, and the accusation of theft was a pretext. The narrative related several claims. The first claim was that because of Stills' dislike for black women and for Ocholi's having married one, Stills divulged to Ocholi's wife ("Cortina")[2] that Ocholi planned to leave her. The second claim was that Stills mockingly asked for Ocholi to point out Nigeria on a world map. The third claim was that Stills and perhaps other supervisors accused Ocholi of stealing a $1.00 bag of popcorn even though his supervisors, including Stills, had previously allowed Ocholi to take similar items from his workplace. SkyWest supervisors then used the popcorn incident as a pretext to discharge Ocholi.[3]

The January 27 Decision granted SkyWest's motion to dismiss because the EEOC charge made no mention of Ocholi's wife, her race, or his being discharged because of her race: the Complaint's claim of discrimination based on Ocholi's wife's race was not like or reasonably related to the EEOC charge's allegation of discrimination based on Ocholi's national origin. The Court allowed Ocholi to amend his Complaint because in responding to the motion to dismiss, Ocholi recounted the chemical spray incident and

---

[2]Ocholi, in his Amended Complaint, refers to this person as "my Wife Cortina Ocholi." (Am. Compl. 1:8.) The Court earlier noted that since the time of the alleged incidents, Ocholi and his wife were divorced. (Court's Apr. 7, 2011, Order 1 n.2.) To avoid confusion, this Decision and Order will refer to this person as "Cortina."

[3]The nature of the action taken against Ocholi is unclear from his original Complaint. Ocholi describes the action in a variety of ways. He states: "I *was* work for Sky West," (Compl. 3:3-4) (emphasis added); "they use the popcorn to say that I steal to get ride [sic] of me," (*id.* at 5:18-19); "He use lies to Laid me off" (*id.* at 6:5-6); and "They . . . tell at 930pm that I am fried [sic]," (*id.* at 6:8-9). The January 27 Decision noted that after filing his Complaint, Ocholi advised the Court that he was still employed with SkyWest. (*See infra* notes 5-6 and accompanying text.)

relayed a comment from a SkyWest supervisor that implied discrimination based on Ocholi's national origin.

B. Ocholi's Claims in the Amended Complaint

Ocholi's Amended Complaint presents four claims. First, it describes an incident in which Cortina confronted Ocholi at his workplace after his supervisor, Stills, told Cortina of Ocholi's plans to leave her. (Am. Compl. 1:13-14.) He had disclosed his plans to Stills in confidence because he feared Cortina's physical aggression. (*Id.* at 1:15-18, 2:3-7, 2:25-30, 3:1-3.) Stills, having stated his dislike for black women and the fact Ocholi had married one, divulged Ocholi's plans because he wanted Ocholi to suffer. (*Id.* at 1:5-10, 3:2-6.) Ocholi concludes that Stills' actions against him were based on Ocholi's "color," Cortina's race, and the Ocholi's marriage to a black woman. (*Id.* at 1:5-10, 3:31-33.)

Second, SkyWest supervisors, including Stills, allowed Ocholi to take various items from the airplanes he serviced. (*Id.* at 3:9-16, 3:27-28.) At some point, a supervisor gave Ocholi a $1.00 bag of popcorn, and when Ocholi arrived at his next shift, he was told to "hand over [his] ID and Badge." (*Id.* at 3:18-26.) Stills also told Ocholi to turn in some of the items taken. (*Id.* at 3:29-31.) Ocholi states "there allots to Know About this is about my color and the Race of my wife Cortina being Black America." (*Id.* at 3:31-33.)

Third, on several occasions, Stills led Ocholi to a world map and, while laughing, requested him to locate Nigeria or his village in Nigeria. (*Id.* at 3:35-37.) Ocholi states that Stills' purpose was to "make Mockery Statement about [his] coming from Nigeria." (*Id.* at 3:34-35.)

-6-

Fourth, the Amended Complaint relates the details of the chemical spray incident. While Ocholi was working, chemical spray got in his eyes, and he flushed them with water as directed by his supervisor. (*Id.* at 3:38-40.) When Ocholi asked to see a doctor because his eyes were in pain, his supervisor responded that it was not an emergency and that, if he was still in pain for his next shift, to continue flushing. (*Id.* at 3:41-4:4.) Ocholi's eyes still hurt when he arrived for his next shift, and he asked again to see a doctor. (*Id.* at 4:4-6.) His supervisor asked "do we go to Hospital in Africa? This not a big deal that why do I want to go and see a Doctor for this Nothing." (*Id.* at 4:6-8.) Several SkyWest employees then pressured Ocholi to sign "safety papers" and backdate them to his start date. (*Id.* at 4:12-17.) When Ocholi refused to backdate them,[4] Stills threatened to extend the probationary period of Ocholi's employment. (*Id.*)

### Analysis

This Decision first addresses whether Ocholi's EEOC charge encompasses the claims of his Amended Complaint and, second, whether claims that are so encompassed withstand the plausibility standards for Rule 12(b)(6) motions set forth above.

A. Claims Dismissed by the January 27 Decision

---

[4]The Amended Complaint states:

[SkyWest employees] come and make sign the safety papers' of Which I refused to sign and [Stills] him self came and force me to sign that he is Nothing takes me off my probations of which he extend it. This like four months after my Start date and they want to back date to the day I start work on May-9-2007, so that was What he make me do before I was able to go see the Doctor and this is some days after the spray in to my eyes . . . "

(Am. Compl. 4:12-17.) This statement does not clearly indicate whether Ocholi refused to sign for the safety policy or to backdate it. Other filings indicate the refusal was in regard to the request to backdate. (Pl.'s Mot. Order. Attach. at 1 [unnumbered], Apr. 11, 2012) (ECF No. 27.)

-7-

Adhering to principles from the law of the case doctrine, the Court concludes that Ocholi's first three claims were dismissed by the January 27 Decision and cannot be raised anew in an amended complaint. The law of the case doctrine reflects the idea that, absent a compelling reason warranting re-examination, a court should not re-visit an earlier ruling in a case. *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). This preference against reopening matters already decided furthers the interests of consistency, finality, and the conservation of judicial resources. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009) (citing *Minch*, 486 F.3d at 301). Ocholi's original Complaint claimed discrimination based on Cortina's race and stated that Stills created problems for Ocholi because of her race. His Amended Complaint restates this and then relates how Stills created these problems: by divulging Ocholi's plan to leave Cortina and by apparently orchestrating the popcorn theft accusation. For both of these episodes, the Amended Complaint plainly states that Stills was motivated by Cortina's race. The January 27 Decision specifically dismissed claims, like these, that alleged discrimination based on Cortina's race because the EEOC charge failed to mention Cortina, her race, or Ocholi's discharge based on her race. Merely explaining Stills' methods does not aid Ocholi. It is, as SkyWest argues, simply more of the same.

The claim detailing Stills' mockery using the world map is also precluded by the law of the case principle. Ocholi briefly raised this claim in his original Complaint, but this Court did not find the incident sufficiently related to the allegations of the EEOC charge. Though the claim was dismissed, the January 27 Decision did not directly address the world

-8-

map incident. Read broadly and with reasonable inferences, the incident may be construed as evidence of discriminatory adverse action based on Ocholi's national origin and not based on Cortina's race. It also involved the same individual named in the EEOC charge: Stills. However, the world map incident did not involve the *same conduct* as alleged in the EEOC charge and, therefore, does not reasonably relate to it. *See Cheek*, 31 F.3d at 501. Because many forms of discrimination based on national origin exist, asserting forms of discrimination based on national origin in both the EEOC charge and the Amended Complaint does not reasonably relate the two. *See id.*

Title VII plaintiffs "may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Ocholi's claim concerning the world map incident does exactly this, as his EEOC charge made no mention of it. Allowing Ocholi to raise this claim now would violate the principles protected by the law of the case doctrine. It would also frustrate the EEOC's investigatory and conciliatory role and deprive SkyWest of notice of the actual aggrieving conduct. *See Cheek*, 31 F.3d at 500.

B. Ocholi's Remaining Claim

Ocholi's remaining claim in his Amended Complaint, construed liberally, is that SkyWest supervisors applied adverse employment actions against him because of his national origin, using the popcorn theft accusation as a pretext. This claim is encompassed, and thereby preserved, by the EEOC charge because, as will be further explained, it satisfies the two-prong test laid out in *Cheek*. First, the claim is reasonably related to the EEOC

-9-

charge because it implicates the same individuals, describes the same conduct, and does not frustrate the purposes of the EEOC charge requirement. *See id.* at 500-01. Second, the claim "grow[s] out" of the allegations of the EEOC charge. *See id.* at 500.

1. Reasonably Related by Implicating the Same Individuals

The claim implicates the same individuals as the EEOC charge. The EEOC charge names only Stills specifically; it states that Stills made a remark concerning Ocholi's national origin during the chemical spray incident and that Stills threatened to terminate Ocholi's employment unless he signed and backdated his receipt of SkyWest's safety policy. It also states that another supervisor gave Ocholi the popcorn and implies someone other than Stills made the decision to terminate Ocholi's employment. The Amended Complaint, however, does not mention any comment from Stills regarding Ocholi's national origin; rather, the only comment made concerning national origin seems to come from another supervisor. The Amended Complaint does describe Stills' threat to extend Ocholi's probation and indicates Stills was involved in having Ocholi turn over his identification and badge. Despite the ambiguity between the two narratives, the Amended Complaint implicates the same individuals as the EEOC charge. Because Ocholi's EEOC charge need not allege each and every fact that would form the basis of a lawsuit, *id.* at 500, it can be understood as alleging discriminatory conduct from SkyWest supervisors, generally, and Stills, specifically. The Amended Complaint accuses the same general group, Ocholi's supervisors, and singles out Stills with more detailed, albeit somewhat confusing, facts.

-10-

Therefore, the same individuals are implicated in the EEOC charge and the popcorn theft accusation claim in the Amended Complaint.

## 2. Reasonably Related by Describing the Same Conduct

The claim describes the same conduct as the EEOC charge. The EEOC charge alleges Ocholi was pretextually discharged for the popcorn theft: the real basis for Ocholi's discharge was his national origin, as evidenced by the threat of termination and the comment concerning his national origin during the chemical spray accident. The Amended Complaint indicates that though Ocholi is still employed with SkyWest, he was suspended,[5] apparently without pay or certain flight benefits, after SkyWest supervisors told him to turn over his identification and badge. This action resulted from the pretextual accusation of popcorn theft: the real motivation for the action was Ocholi's national origin, again evidenced by Stills' threat of an extended probationary employment term and the comment concerning his national origin during the chemical spray accident.

SkyWest makes much of the fact that Ocholi alleged he had been discharged in his EEOC charge but now claims in his Amended Complaint that he is still SkyWest's employee. Apparently, SkyWest believes that discriminatory discharge, as Ocholi alleged

---

[5]The exact nature of SkyWest's discipline of Ocholi is unclear from his Amended Complaint. He states "I *was* at working with SkyWest Airlines for I am still a Staff with Sky west Airlines," (Am. Compl. 1:2-3) (emphasis added); "I have being on suspensions till now," (*id.* at 4:23); and "I am still an employee of sky west Air line," (*id.* at 4:31.) However, it is clear that Ocholi is still employed by SkyWest; he is not being paid, apparently because he is not on the job; and some flight benefits he had via his employment with SkyWest have been cancelled. For ease of understanding, the Court will refer to this discipline and Ocholi's status as "suspension."

in his EEOC charge, is inherently not the same conduct as the actions described in Ocholi's Amended Complaint which seem to fall short of complete discharge.[6]

A similar discrepancy was addressed in *Moore v. Vital Prods., Inc.*, 641 F.3d 253 (7th Cir. 2011). In *Moore*, the plaintiff employee's EEOC charge focused almost entirely on allegations and evidence of a sexually and racially hostile work environment, never asserting that he had been discharged. *Id.* at 257. In fact, the charge explained that the plaintiff was "currently on medical leave." *Id.* The court held that the plaintiff could not subsequently complain of discriminatory discharge in his lawsuit because he had not alleged such conduct in the EEOC charge. *Id.* at 258. Further, Title VII plaintiffs are not exempted from the EEOC charge requirement merely because they are confused about the underlying facts. *Id.* at 257. Similarly, when a plaintiff confines the allegations of his EEOC charge solely to discriminatory discharge, he cannot claim discrimination in rehiring in the subsequent lawsuit. *Caldwell v. Nat'l Ass'n of Home Builders*, 771 F.2d 1051, 1054 (7th Cir. 1985).

---

[6]SkyWest's motion seems to argue that, under a Title VII action, Ocholi must show that his employment has been terminated. This is not so: Title VII makes it unlawful for an employer to "discharge . . . or otherwise discriminate against any individual" in a prohibited manner based on the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Reading the statute to protect employees only upon termination would make the "or otherwise discriminate" language surplusage. The only plausible explanation for SkyWest's arguing in this fashion is the unstated premise that because Ocholi primarily alleged that he had been discharged in his EEOC charge, he must also claim a discharge in his complaint to satisfy the Title VII precondition to suit. *See Cheek*, 31 F.3d at 500. Yet, SkyWest cites no authority supporting this premise. Ordinarily, a defendant must deny specifically and with particularity that a Title VII condition precedent has been met. *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1125 (7th Cir. 1983). Though SkyWest's motion does not specify that the EEOC charge precondition has gone unmet, its previous motion did exactly that. (Def.'s Mot. Dismiss Pl.'s Compl. ¶¶ 3-4, Aug. 25, 2011) (ECF No. 11) Accordingly, the Court considers whether Ocholi is obliged to claim discriminatory discharge, as opposed to suspension, in his Amended Complaint to match the allegation of discriminatory discharge in his EEOC charge.

-12-

However, Ocholi's claim is distinguishable. *Moore* relies on the fact that the employer's different discriminatory employment actions, creating a hostile work environment and discharging the plaintiff, did not arise from the same factual basis. The appellate court noted that the EEOC charge focused on the plaintiff's hostile work environment: the narrative included nothing concerning the facts surrounding the plaintiff's later discharge. *Moore*, 641 F.3d at 257. Conversely, where the EEOC charge does address, even indirectly, the facts forming the basis of a claim that is later directly expressed in the complaint, the EEOC charge then encompasses that claim of the complaint. *See Caldwell*, 771 F.2d at 1055; *Jenkins v. Blue Cross Mut. Hosp. Ins. Inc.*, 538 F.2d 164, 168-69 (7th Cir. 1976).[7]

If the EEOC charge and the complaint rely on employment actions that are factually different, separate, and distinct; then courts find no reasonable relation. *See Teal*, 559 F.3d at 692 (holding that a 2003 discharge for noncompliance was factually distinct from a 2002 discharge for striking a supervisor); *Conley v. Vill. of Bedford Park,* 215 F.3d 703, 710 (7th Cir. 2000) (holding that a suspension for failure to report to work was a discrete action that was not reasonably related to other employment actions: unpleasant job assignments, lack of overtime, and failure to promote); *Sauzek v. Exxon Coal USA, Inc.*, 202

---

[7]In many cases holding that an EEOC charge did not encompass claims in the complaint, it would be impossible for the plaintiff to address the factual basis for the complaint in the EEOC charge. This impossibility arises because the complaint is based on the facts surrounding the employer's conduct *in response to* the plaintiff employee's filing the EEOC charge, which necessarily occurs *after* the EEOC charge has been filed. *See, e.g.*, *Teal v. Potter*, 559 F.3d 687, 691-93 (7th Cir. 2009). Conversely, the conduct of which Ocholi complains in his Amended Complaint is not a response to his filing the EEOC charge; rather, the conduct that underlies his Amended Complaint and his EEOC charge occurred at the same time.

-13-

F.3d 913, 920 (7th Cir. 2000) ("[A]n employer's decision to terminate a worker is a separate and distinct act from a subsequent decision not to rehire . . . .").

Here, the underlying facts concerning the conduct of SkyWest supervisors is the same in both Ocholi's EEOC charge and this claim of his Amended Complaint regardless of whether he describes the action as a discharge or a suspension. The Court further takes note of the admonishment from the Court of Appeals for the Seventh Circuit that "'technicalities are particularly inappropriate in a statutory scheme [like Title VII] in which laymen, unassisted by trained lawyers, initiate the process.'" *Rush*, 966 F.2d at 1111 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). Because the underlying facts of both the EEOC charge and the popcorn theft claim in the Amended Complaint concern one, inseparable action on the part of SkyWest supervisors, the claim describes the same conduct as the EEOC charge.

3. Satisfies the Purposes of the EEOC Charge Requirement

Permitting the claim of discriminatory suspension rather than discriminatory discharge does not frustrate the purposes behind the EEOC charge requirement. In *Moore*, the court reiterated that the primary purpose of the EEOC charge requirement is to ensure that the EEOC can adequately investigate complaints to facilitate settlement. *Moore*, 641 F.3d at 257-58; *Cheek*, 31 F.3d at 500. It is also designed to warn the employer of the conduct about which the employee is aggrieved. *Rush*, 966 F.2d at 1110. The plaintiff's complaint in *Moore* was not like or reasonably related to the EEOC charge because it was not based on the same conduct. 641 F.3d at 257 (holding that EEOC charge's focus on

evidence of a hostile work environment was not like or reasonably related to complaint's claim of discriminatory discharge). This factual disparity deprived the employer of notice and the EEOC of the opportunity to investigate the allegations made in the complaint. *See id.* Here, unlike in *Moore*, Ocholi's allegation in the EEOC charge involves the same conduct as that of the claim in his Amended Complaint. Because the claim was based on the same conduct, it satisfies the purposes of the EEOC charge requirement: it warned SkyWest of the conduct that aggrieved Ocholi, and it gave the EEOC the opportunity to investigate that conduct. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 (7th Cir. 1985) (finding issues of employer notice and EEOC investigation and conciliation are not implicated where claims in the complaint are closely related to the factual allegations in the EEOC charge).

4. Grows Out of the EEOC Charge

Furthermore, Ocholi's remaining claim grows out of the allegations of his EEOC charge. Ocholi's claim must meet this requirement if the EEOC charge is to encompass it. *See Jenkins*, 538 F.2d at 167. This second part of the two-prong test requires speculation as to what an EEOC investigation into the charge might reasonably uncover; such speculation is fraught with difficulty. *Cheek,* 31 F.3d at 500; *Hemmige v. Chi. Pub. Sch.*, 786 F.2d 280, 283 (7th Cir. 1986) (citing *Jenkins*, 538 F.2d at 167). Here, the details of Ocholi's claim could reasonably be expected to have been discovered during the EEOC's investigation of the charge. In the EEOC charge, Ocholi referred to his supervisors' action requiring him to turn over his work identification and badge, a comment regarding his national origin during the chemical spray accident, the popcorn theft allegation, and Stills'

-15-

involvement in these incidents. Thus, an EEOC investigation reasonably would uncover the nature of the action against Ocholi, the identity of the person who made the comment concerning his national origin, the content of that comment, and the extent of Stills' and other supervisors' involvement in the action against Ocholi. These facts form the substance of Ocholi's remaining claim in his Amended Complaint and therefore grow out of the EEOC allegation. Ocholi's popcorn theft claim is reasonably related to the allegations in the EEOC charge because it implicates the same individuals and describes the same conduct as the charge. Further, permitting the claim to stand does not frustrate the purposes of the EEOC charge requirement because the EEOC had the opportunity to investigate the conduct detailed in the Amended Complaint and to pursue conciliation, and SkyWest had notice of the conduct by which Ocholi was aggrieved. The claim also grows out of the EEOC charge's allegations because an EEOC investigation of the charge could reasonably be expected to uncover the underlying facts of Ocholi's claim in this lawsuit. Accordingly, the EEOC charge encompasses Ocholi's claim, and the claim is preserved.

C. Failure to State a Claim

Having concluded that Ocholi's claim concerning the chemical spray incident and his subsequent suspension is preserved, the Court now considers whether that claim meets the standards of Rule 8(a) of the Federal Rules of Civil Procedure. Under Rule 8(a), Ocholi's Amended Complaint must include a "short and plain statement of the claim showing that [he] is entitled to relief." SkyWest contends that the Amended Complaint fails to do this and that dismissal under Rule 12(b)(6) is therefore appropriate.

-16-

SkyWest correctly points out that the touchstone of Rule 8(a)'s pleading requirement remains "fair notice" to a defendant of the plaintiff's claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-04 (7th Cir. 2010); *Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2009); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1215 (3d ed. 2004) (cited in *Swanson*, 614 F.3d at 404). Accordingly, a Title VII plaintiff such as Ocholi need not make out a *prima facie* case by showing the elements of the claim, as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), at the pleading stage. *Swierkiewicz*, 534 U.S. at 510-13. Instead, the complaint need only contain enough factual matter to state a facially plausible claim for relief. *Iqbal*, 556 U.S. at 678. To determine whether a complaint is facially plausible, first, courts excise any pleadings that are nothing more than conclusions unsupported by factual allegations; such conclusory statements are not given the assumption of truth normally given to the plaintiff's pleadings under a Rule 12(b)(6) motion to dismiss. *Id.* at 679; *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Second, after excising the conclusory statements, courts then determine whether the remaining factual allegations, assumed to be true, plausibly suggest an entitlement to relief. *Iqbal*, 556 U.S. at 679; *McCauley*, 671 F.3d at 616. Applying the process to this case, Ocholi's Amended Complaint passes muster.

1. Excising Conclusory Pleadings

None of Ocholi's pleadings concerning his preserved claim are conclusory. The Court of Appeals for this Circuit has interpreted *Twombly* and *Iqbal* to require plaintiffs

to provide some specific facts in support of their asserted legal claims. *McCauley*, 671 F.3d at 616; *Swanson*, 614 F.3d at 404; *Brooks*, 578 F.3d at 581. Providing some specific facts to support legal conclusions satisfies *Iqbal*'s concern that plaintiffs must be armed with something more than supposition to unlock the doors of discovery. 556 U.S. at 678-79. Essentially, Ocholi's claim contains three parts: (1) SkyWest suspended him; (2) the basis for suspension was Ocholi's national origin; and (3) the popcorn theft accusation was a pretext to mask the real basis for the suspension. Each part of the claim is supported by factual allegation.

First, Ocholi alleges that SkyWest suspended him. This, by itself, is a factual allegation, not merely a conclusory one. However, Ocholi further supports it with more specific facts. The Amended Complaint describes supervisors telling him to hand in his identification and badge and Stills listing the allegedly stolen items that Ocholi should return along with his identification and badge. It also explains the severity of the suspension: Ocholi was not given work, was not paid, and had his flight benefits canceled. These facts raise Ocholi's allegation that SkyWest suspended him above a mere conclusory statement.

Second, Ocholi alleges that his suspension was based on his national origin. For factual support, Ocholi relates the statement by his supervisor asking whether people in

-18-

Africa[8] would see a doctor for an injury like the one Ocholi sustained. The allegation is therefore not conclusory and merits the assumption of truth. *Cf. Swanson*, 614 F.3d at 402-03 (holding that an allegation of racial discrimination survived a motion to dismiss because, during a loan appraisal process, the defendant bank's representative commented that his family was partly African-American) (construed in *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2012 WL 1877740, at *8 (N.D. Ind. May 18, 2012)).

Third, Ocholi alleges that SkyWest's stated reason for the suspension, an accusation of theft, was only pretext. For factual support, the Amended Complaint alleges that Ocholi's supervisors had previously allowed him to take similar items with no adverse consequences. It is reasonable to infer from this fact that SkyWest supervisors had no real interest in the items Ocholi had taken: his suspension was motivated by other factors. Thus, the pretext allegation is not conclusory.

---

[8]Generally, a claim of discrimination based on national origin includes an allegation that the defendant knew of the nation from which the plaintiff hailed and then acted upon it. *See, e.g.*, *Czarniecki v. City of Chi.*, 633 F.3d 545, 547-48 (7th Cir. 2011). Though Ocholi does state in his Amended Complaint that his nation of origin is Nigeria, the supervisor's comment used here to lend factual support to Ocholi's claim of discrimination indicates only that the supervisor believed Ocholi was from Africa, not specifically Nigeria. Africa, of course, is a continent comprised of many nations, one of them being Nigeria. Surprisingly few cases address the relation between discrimination based on continental origin and the "national origin" category of discrimination. However, the Court of Appeals has held that even though Hispanics come from various countries, the term "Hispanic" sufficiently identifies a person's national origin for a Title VII claim. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 922-23 (7th Cir. 2007). Likewise, the term "African-American" has a continental, not national, referent; yet the term has supported claims of discrimination under the "national origin" category. *Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, *7-*8 n.3 (D.D.C. 2011). *But see James v. Kindercare Learning Ctrs., Inc.*, No. Civ. 303CV1593H, 2004 WL 1773700, at *2 n.1 (N.D. Tex. Aug. 9, 2004) (noting that because "African" does not qualify as a national origin, among other reasons, the plaintiff's Title VII claims based on national origin discrimination should be dismissed). Consequently, this Court, construing factual allegations in Ocholi's favor, will accept that the supervisor's comment is sufficient to place the claim in the "national origin" category for purposes of this Rule 12(b)(6) motion; however, the issue may be revisited at a later stage. *See Henry v. Univ. of S. Fla. Bd. of Trs.*, No. 8:09-cv-11-T-33EAJ, 2009 WL 4855518, at *4-5 (M.D. Fla. Dec. 10, 2009). This is especially appropriate because neither party has directly addressed the issue.

2. Determining Facial Plausibility

The Amended Complaint's factual allegations, accepted as true, plausibly suggest that Ocholi is entitled to relief. The Court of Appeals for the Seventh Circuit has advised that for uncomplicated, straightforward cases, plaintiffs should not have difficulty in meeting the burdens of stating a valid claim. *Swanson*, 614 F.3d at 404; *see McCauley*, 671 F.3d at 617. A plaintiff need only "'give enough details about the subject-matter of the case to present a story that holds together.'" *McCauley*, 671 F.3d at 616 (quoting *Swanson*, 614 F.3d at 404). In the context of straightforward employment discrimination, identifying who discriminated, the type of discrimination, and when it took place is enough detail. *Id.* at 617 (construing *Swanson*, 614 F.3d at 404).

*Swanson* provides an example:

> A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what "really" went on in this plaintiff's case.

614 F.3d at 404-05. Ocholi's Amended Complaint contains a straightforward claim and presents a story that holds together by identifying who discriminated against him, the type of discrimination, and when it took place.

*Swanson* is particularly helpful. Swanson, an African-American, filed a pro se complaint against a bank and the bank's appraiser for violating provisions of the Fair Housing Act prohibiting discrimination based on race. *Id.* at 402-03. She alleged that the

defendants had intentionally undervalued her home in order to deny her a home-equity loan. *Id.* at 403. The low appraisal was a pretext: the real reason for the denial was that the defendants disfavored African-Americans. *Id.* For factual support, Swanson alleged that an independent appraisal had estimated her home at a much higher value and that during the loan application process, a bank representative had commented that members of his family were partly African-American. *Id.*

> The appellate court concluded:
>
> > Swanson's complaint identifies the type of discrimination she thinks occurs (racial), by whom ([the bank] through [its representative who made the comment], the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan). This is all that she needed to put in the complaint.

*Id.* at 405. Similarly, Ocholi is a pro se plaintiff alleging workplace discrimination. His Amended Complaint identifies the type of discrimination he thinks occurred: discrimination based on national origin. It also identifies who discriminated: SkyWest through its supervisors. Finally, the Amended Complaint identifies when this discrimination occurred: in connection with the chemical spray incident and Ocholi's subsequent suspension in the fall of 2008.[9] Thus Ocholi's Amended Complaint sufficiently states a facially plausible claim under Rule 8(a).

---

[9]In the Amended Complaint, Ocholi states that the chemical spray incident and later requests to backdate the "safety papers" occurred "like four month after my Start date and they want me to back date to the day I start work on May-9- 2007 . . . ." (Am. Compl. 4:14-15.) The EEOC charge places the chemical spray incident in August 2008 and the suspension on or about November 13, 2008. (Aff. Def.'s Mot. Dismiss, ¶ 2, Ex. A.) The incident report for the chemical spray injury also places Ocholi's date of hire on May 9, 2008, not 2007. (Pl.'s Mot. Order. Attach., at 2 [unnumbered], Apr. 11, 2012.) The Court infers that the time period to which the Amended Complaint refers is the fall of 2008 and that the 2007 date is a typographical error.

Finally, the Amended Complaint provides SkyWest with fair notice of the claim and its grounds. By identifying the "what," "who," and "when," of Ocholi's claim, the Amended Complaint presents a story that holds together. This story sufficiently apprises SkyWest of both what the claim is and its basis in fact. Therefore, Ocholi is entitled to take the next step in litigation for his remaining claim.

### Other Motions

Ocholi filed two motions after SkyWest filed its motion to dismiss. First, on March 21, 2012, Ocholi filed a "Motion for Hearing" and a "Motion for Discovery" with a supporting memorandum. In this two-part motion, Ocholi asks the Court for a hearing so that he may prove his case, for permission to get documents from SkyWest and the eye clinic and to "talk with some witness[es]," and for relief in the form of money and flight benefits. (ECF No. 26, 3.) Second, on April 11, 2012, Ocholi filed a "Motion for Order," requesting permission to get documents and for relief in the form of money, stocks, and disciplinary action against his SkyWest supervisors.

SkyWest responded to Ocholi's motion for order arguing that the motion demanded money without a legal basis for the demand and that the Court should therefore ignore the motion. (Def.'s Resp. Opp'n Pl.'s Mot. ¶ 1, May 14, 2012.) However, in its response, SkyWest cites to no legal authority concerning what Ocholi may and may not present in a motion filed with the Court.

Even though plaintiffs who represent themselves are given some leeway, *see Haines v. Kerner*, 404 U.S. at 520-21, they must still follow the rules of procedure, *Downs*

-22-

*v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1994) (citing *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994)). Motions filed with the Court must comply with Rule 7(b) of the Federal Rules of Civil Procedure. Rule 7(b)(1) requires that motions must "(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." Fed. R. Civ. P. 7(b)(1).

Ocholi's Motion for Order satisfies these requirements: it is in writing; it states the relief sought (damages and permission to get documents); and it states the grounds for an order (Ocholi was injured and needs the documents to prove his case). *Compare Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010) (concluding that pro se plaintiff's motion, "I never aggred [sic] to settlement vacate order Dec 11-08 and reinstate case" was sufficient under Rule 7(b)), *with Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977) (concluding that bare-bones motion to vacate judgment which did not even state one ground for granting the motion was insufficient under Rule 7(b)).

Essentially, Ocholi's motions amount to three requests to the Court: (1) a hearing to prove his case; (2) permission to get documents and talk to witnesses; and (3) relief, primarily money, to redress SkyWest's action against him. At this stage, the Court must deny all of these requests. Evidentiary hearings to show proof of Ocholi's claim would be premature during the pleading stage of this case; Ocholi will have to wait for any such hearing. Similarly, obtaining documents from SkyWest will be done later during the discovery stage of the case. To determine how documents may be obtained using the correct procedures, the Court refers Ocholi to Rule 26 of the Federal Rules of Civil

Procedure for a general outline of the discovery process and Rules 27 through 37 for a more detailed explanation. Finally, though Ocholi sufficiently stated the relief he seeks for the purposes of filing his Complaint under Rule 8(a)(3) of the Federal Rules of Civil Procedure, it is premature to begin adding up the amount of money to which he believes he is entitled. Again, specifically sought remedies, including dollar amounts and stock options, should be addressed at a later stage.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

SkyWest's motion to dismiss (Docket No. 23) is **DENIED,** with respect to subject-matter jurisdiction under Rule 12(b)(1), and, with respect to failure to state a claim under Rule 12(b)(6), **GRANTED** with respect to the previously dismissed claims (claims one through three) and **DENIED** with respect to the popcorn theft claim (fourth claim);

Ocholi's Amended Complaint (Docket No. 20) is **DISMISSED** to the extent stated;

Ocholi's motion for hearing and for discovery, (Docket No. 26) is **DENIED**; and

Ocholi's motion for an order (Docket No. 27) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2012.

BY THE COURT:

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

-24-